746 So.2d 1096 (1999)
Janet SNYDER, as Conservator of Frances Bell, Appellant/Cross-appellee,
v.
William G. BELL, in his capacity as Trustee of the Malvern Hill Bell Revocable Trust U/A/D 01-25-95 and in his capacity as Personal Representative of the Estate of Malvern Hill Bell, deceased, Appellee/Cross-appellant.
William G. Bell, in his capacity as Trustee of the Malvern Hill Bell Revocable Trust U/A/D 01-25-95 and in his capacity as Personal Representative of the Estate of Malvern Hill Bell, deceased, Appellant/Cross-appellee,
v.
Janet Snyder, as Conservator of Frances Bell, Appellee/Cross-appellant.
Nos. 98-00191, 98-00853.
District Court of Appeal of Florida, Second District.
September 10, 1999.
A. Lamar Matthews, Jr. and Arthur S. Hardy of Matthews, Hutton & Eastmoore, Sarasota, and Robert E. Turffs of Brann & Turffs, Sarasota, for Appellant/Cross-appellee.
John J. Waskom, Thomas F. Icard, and Michael L. Foreman of Icard, Merrill, Cullis, Timm, Furen & Ginsberg, P.A., Sarasota, and Steven L. Brannock of Holland & Knight, LLP, Tampa, for Appellee/Cross-appellant.
PER CURIAM.
Appellant/cross-appellee Janet Snyder, as conservator[1] of Frances Bell (Frances), *1097 and Appellee/cross-appellant William G. Bell, in his capacity as trustee of the Malvern Hill Bell (Malvern) Revocable Trust and in his capacity as personal representative of the estate of Malvern Hill Bell (the Estate), both appeal the final judgment of the trial court awarding each party damages in this dispute involving the Estate. Of the seven issues appealed to this court, we affirm six without comment. On the issue of the trial court's failure to permit Snyder to receive treble damages on a claim of civil theft against the Estate, we reverse.
Frances and Malvern married in 1976. Frances came into the marriage as a wealthy divorcee, but the amount of money Malvern brought to the marriage is disputed. Prior to their marriage, Frances and Malvern entered into a prenuptial agreement, which provided that any funds placed into joint accounts by either Frances or Malvern would remain that individual's separate property unless a gift could be proven. During the course of the marriage, Malvern assumed control over Frances' finances.
In 1994, Frances suffered a debilitating stroke. Frances' daughter, Snyder, made arrangements to have Frances transported to an assisted-care living facility in Tennessee, where she currently resides. Malvern continued to control Frances' finances and subsequently received a check from a brokerage house in the amount of $122,634.59 made payable to Frances. Malvern deposited the check into his personal bank account. The endorsement on the back of the check purported to be the signature of Frances.
In October 1995, Malvern entered the hospital for cancer treatments. Because of his illness, Malvern became physically unable to continue paying the bills for Frances' care. That event caused Snyder and Bell, Malvern's nephew, to become actively involved in the property and business matters of Frances and Malvern. Malvern's death in November 1995 quickly led to bitter feelings, allegations, and lawsuits between Snyder and Bell.
Snyder filed suit against Bell, and Bell counterclaimed. During the time between the filing of the suit and trial, the court consolidated the cases and the parties filed numerous pleadings and amendments. The amendments included a claim by Snyder for civil theft against the Estate, alleging that Malvern wrongfully deposited the $122,634.59 check and requesting treble damages in the amount of $367,903.77 pursuant to section 772.11, Florida Statutes (1995).
In July 1997, the trial court entered an interlocutory order on Snyder's civil theft claim dismissing Snyder's claim for treble damages. The court concluded that, as a matter of law, treble damages are not available against an estate. In a two-week trial, a jury considered Snyder's claims against the Estate and the Trust for constructive fraud, breach of prenuptial agreement, civil theft, and conversion; Snyder's claims against Bell, individually, for conversion and breach of fiduciary duty; and Snyder's claim against Bell for spoliation of evidence. The jury also considered Bell's claims against Snyder for conversion and spoliation of evidence. The trial court resolved Snyder's additional nonjury claims for an accounting and for removal of Bell as personal representative and trustee.
The jury made the following findings: (1) that Malvern committed constructive fraud against Frances and breached the prenuptial agreement, with damages in the amount of $140,000; (2) that Malvern committed civil theft of the $122,634.59 check; (3) that Malvern did not commit conversion; (4) that Bell, individually, did not commit conversion; (5) that Bell, as trustee, did not breach his fiduciary duty; (6) that Snyder converted property belonging to Malvern in the amount of $13,200, which merited punitive damages in the amount of $250,000; and (7) that Snyder spoliated evidence with damages in the amount of $40,000. The trial court subsequently reduced the punitive damages award to $30,000 and set aside the $40,000 spoliation verdict.
*1098 The only issue we address is the trial court's failure to permit Snyder to recover treble damages for the civil theft of the $122,634.59 check. The Florida Civil Theft Statute, part of the Civil Remedies for Criminal Practices Act, provides as follows:
Any person who proves by clear and convincing evidence that he has been injured in any fashion by reason of any violation of the provisions of §§ 812.012-812.037 has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts.... In no event shall punitive damages be awarded under this section.
§ 772.11, Fla. Stat. (1995) (emphasis added). Notwithstanding the mandatory requirement of the civil theft statute, the trial court ruled that, based on public policy reasons previously applied by the Florida Supreme Court to punitive damage claims in Lohr v. Byrd, 522 So.2d 845 (Fla.1988), treble damages cannot, as a matter of law, be recovered against a decedent's estate.
In Lohr, the Florida Supreme Court addressed the following question certified to be of great public importance:
MAY PUNITIVE DAMAGES BE AWARDED AGAINST A DECEASED TORTFEASOR'S ESTATE?
In answering this question in the negative, the supreme court analyzed the public policy considerations and ramifications of allowing such damages, which are solely meant to punish, against the innocent heirs or creditors of a decedent's estate. Specifically, the court stated that because the basic purpose of punitive damages is punishment and not compensation to the injured party, the imposition of these damages at the expense of innocent heirs and creditors "ignores our basic philosophy of justice." Id. at 847.
In this case, the trial court expanded Lohr to include treble damages. The basis for this ruling is found, primarily, in the trial court's conclusion that treble damages are a "form of punitive damages." According to the trial court, if treble damages are no more than a form of punitive damages and a court may not award punitive damages against a deceased tortfeasor's estate, then a court may not award treble damages against a deceased tortfeasor's estate.
The trial court's position fails upon a critical examination of the differences between judicially-created punitive damages and legislatively-created treble damages. Florida's civil theft statute is without question remedial, rather than punitive, in nature. See § 812.037, Fla. Stat. (1995) ("Notwithstanding §§ 775.021, 812.012-812.037 shall not be construed strictly or liberally, but shall be construed in light of their purposes to achieve their remedial goals.") (emphasis added). See also Ziccardi v. Strother, 570 So.2d 1319, 1321 (Fla. 2d DCA 1990) (finding that the Civil Remedies for Criminal Practices Act was remedial in nature); Stuart L. Stein, P.A. v. Miller Indus., Inc., 564 So.2d 539 (Fla. 4th DCA 1990); Senfeld v. Bank of Nova Scotia Trust Co., 450 So.2d 1157, 1165 (Fla. 3d DCA 1984) (finding that the prior version of the civil theft statute, then section 812.035, was remedial in nature); cf. Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977) (stating that treble damage provision of Clayton Act to any person injured in business or property by reason of a violation of antitrust laws is designed primarily as a remedy). Therefore, the Florida Supreme Court's decision in Lohr and its reasoning do not apply to the treble damages provision of section 772.11.
Moreover, a conclusion that the treble damages recoverable under section 772.11 are a form of punitive damages flies in the face of the statute itself. The civil theft statute expressly provides that "[i]n no event shall punitive damages be awarded under this section." § 772.11, Fla. Stat. (1995). However, the statute also provides for and mandates an award of treble damages *1099 upon a finding of liability. If treble damages are no more than a "form of punitive damages," as the trial court concluded, the statute would contain an inherent inconsistency.
We find that the federal decisions holding that treble damages survive the death of the defendant are persuasive authority for the reversal of the trial court's order denying Snyder a remedy expressly provided by the Florida Legislature. See Epstein v. Epstein, 966 F.Supp. 260 (S.D.N.Y. 1997) (holding that treble damages, which are remedial in nature, are not precluded under the common law rule that punitive claims do not survive the defendant's death); First American Corp. v. Al-Nahyan, 948 F.Supp. 1107 (D.D.C.1996). Similarly, we conclude that a claim for treble damages under the civil theft statute is remedial in nature and survives the death of the tortfeasor. Accordingly, the trial court erred in extending Lohr to preclude treble damages against a deceased tortfeasor's estate.
Affirmed in part; reversed and remanded for the trial court to enter an order granting Snyder treble damages on the civil theft claim.
CAMPBELL, A.C.J., and CASANUEVA, J., Concur. PARKER, J., Concurs in part; dissents in part with opinion.
PARKER, Judge, Concurring in part; dissenting in part.
I concur with the majority that six of the issues should be affirmed. I would also affirm the trial court on its denial of treble damages to Snyder. Therefore, I respectfully dissent as to that issue.
In Lohr v. Byrd, 522 So.2d 845, 846 (Fla.1988), the Florida Supreme Court concluded that punitive damages may not be awarded against a deceased tortfeasor's estate. The court reasoned that it would not be just to punish the decedent's innocent heirs when the wrongdoer is unavailable because of death. See id. In holding that Lohr precluded the award of treble damages against the estate of a deceased tortfeasor, the trial court found that treble damages were punitive in nature and concluded that the same reasoning which supported Lohr supported prohibiting treble damages.
I would affirm the trial court because it is well-settled that treble damages are punitive in nature. See Summers v. Federal Deposit Ins. Corp., 592 F.Supp. 1240, 1243 (W.D.Okla.1984) (holding that treble damages could not be assessed against the FDIC in light of a case which held that punitive damages could not be assessed against the FDIC); Shires v. Magnavox Co., 432 F.Supp. 231, 235 (E.D.Tenn.1976) (holding that a party could not recover treble damages from the estate of a deceased defendant because treble damages were punitive in nature); Country Manors Ass'n, Inc. v. Master Antenna Sys., Inc., 534 So.2d 1187, 1195 (Fla. 4th DCA 1988) (holding that treble damages were not covered by liability insurance because treble damages are "fines or penalties imposed by law or matters which may be deemed uninsurable under the law"); McArthur Dairy, Inc. v. Original Kielbs, Inc., 481 So.2d 535, 539-40 (Fla. 3d DCA 1986) (holding that ordinary rules of civil liability relating to punitive damages determined liability under the civil theft statute). These cases show a trend of disallowing treble damages where the party against whom they are awarded is an innocent party, as opposed to the tortfeasor. This trend is also consistent with the policy espoused in Lohr.
Additionally, Snyder's argument that principles of statutory construction preclude a finding that treble damages are punitive in nature is without merit. It is clear from the application of the statute that the statement "[i]n no event shall punitive damages be awarded under this section" purports to preclude a double recovery of damages which are punitive in *1100 nature. See, e.g., Pelletier v. Cutler, 543 So.2d 406, 407 (Fla. 4th DCA 1989) (affirming the trial court's order denying treble damages where punitive damages had already been awarded because "[t]he award amounted to a double recovery and an excessive penalty"). As such, the inclusion of the word "punitive" would not negate the fact that the statute awards damages that are punitive in nature.
Because treble damages are punitive in nature, I concur with the trial court's finding that Lohr precludes an award of treble damages against the estate of a deceased tortfeasor. Accordingly, I would affirm the trial court's denial of treble damages on Snyder's civil theft claim.
NOTES
[1] The trial court order granting the conservatorship was entered in the State of Tennessee.